# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MARK LAMPRON, | ) |
| *Plaintiff* | ) ) ) |
| v. | ) ) ) Case No. 2:12-cv-197-GZS |
| GROUP LIFE INSURANCE AND DISABILITY PLAN OF UNITED TECHNOLOGIES CORPORATION, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, and PRATT & WHITNEY, | ) ) ) ) ) ) |
| *Defendants.* | ) ) |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant Pratt & Whitney, A Division of United Technologies Corporation's Motion To Dismiss Count V Of Plaintiff's First Amended Complaint And To Dismiss Pratt & Whitney As A Defendant For Purposes Of Count VI (ECF No. 19) ("Motion To Dismiss"). For the reasons explained herein, the Court GRANTS the Motion To Dismiss (ECF No. 19).

## I. LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering the merits of a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the non-movant's favor.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). While "detailed factual allegations" are not necessary, Twombly, 550 U.S. at 555, the complaint

must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 570) (internal quotations omitted).

"If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). At this point in the litigation, "the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted." Bodman v. Maine, Dept. of Health & Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010) (denying motion to dismiss a hostile work environment claim).

## II. BACKGROUND

Plaintiff Mark Lampron was employed by Pratt & Whitney, a division of United Technologies Corporation (the "Company"), from June of 1998 until the Company terminated his employment on July 1, 2010. (Am. Compl. (ECF No. 16) ¶¶ 18, 19.) Throughout his employment, Lampron received pay raises and favorable performance reviews, aside from negative feedback with regard to his use of sick or personal time during 2001, 2005 and 2009. (Id. ¶¶ 20, 21, 23-26.)

Through his employment, Lampron was a participant in Defendant The Group Life Insurance and Disability Plan of United Technologies Corporation (the "Plan"), which provided short-term and long-term disability benefits to plan participants. (Am. Compl. ¶¶ 3, 8.) Defendant Liberty Life Assurance Company of Boston ("Liberty") was the Plan Administrator for the Plan. (Id. ¶ 9.) While the Company self-funded short-term benefits under the Plan,

Liberty, as the Plan Administrator, had the discretion to determine eligibility for short-term and long-term benefits. (Id. ¶¶ 68, 75.) Liberty funded the long-term benefits ("LTD") under the Plan. (Id. ¶ 75.)

Lampron has suffered from anxiety at various points in his life. (Am. Compl. ¶ 32.) The condition was exacerbated in May of 2008 when a colleague placed a razor blade inside his shoes. (Id. ¶¶ 32, 33.) The Company's protective services unit investigated the incident but did not take any action. (Id. ¶ 34.) In the aftermath of the incident, Lampron's anxiety increased, and he began having severe panic attacks in the summer of 2009. (Id. ¶ 35.) On September 25, 2009, Lampron experienced a severe panic attack at work that required medical attention. (Id. ¶ 36.) Throughout September and October of 2009, Lampron was under the care of physicians and psychiatrists and was diagnosed with an anxiety and/or panic disorder, placed on medication and given restrictions on returning to work. (Id. ¶¶ 37, 38.)

Lampron submitted a claim for short-term disability ("STD") benefits arising out of his anxiety with a date of disability of October 17, 2009. (Am. Compl. ¶ 41.) Liberty approved the STD benefits through November 30, 2009. (Id. ¶ 44.) Lampron appealed the decision to deny STD benefits beyond November 30, 2009, and Liberty extended the benefits through March 31, 2010. (Id. ¶¶ 45, 46.) Thereafter, Liberty notified Lampron that it was terminating his STD benefits as of March 31, 2010. (Id. ¶ 53.)

Lampron administratively appealed the decision to terminate his STD benefits as of March 31, 2010. (Am. Compl. ¶ 54.) On May 5, 2010, Lampron's doctor wrote a note indicating that Lampron had been a patient of the doctor's since October of 2009, that Lampron was seeing a psychiatrist and that he was experiencing severe anxiety. (Id. ¶ 59.) On June 9,

2010, Liberty denied Lampron's appeal and upheld its termination of the STD benefits beyond March 31, 2010. (Id. ¶ 56.)

By letter dated June 17, 2010, the Company informed Lampron that he had to be cleared by both a physician and the Company's own medical department to return to work by June 30, 2010 or face termination. (Am. Compl. ¶ 61.) He did not return to work. Lampron was terminated on July 1, 2010. (Id. ¶ 19.)

On September 4, 2012, Lampron filed his First Amended Complaint asserting six counts. Specifically, in Count V, Lampron alleged that the Company interfered with his ERISA benefits in violation of ERISA § 510. In Count VI, Lampron brought a cause of action for enforcement of the terms of the Plan under ERISA § 502(a)(1)(B) against the Company and other defendants. On September 18, 2012, the Company filed its Motion To Dismiss Count V of the Amended Complaint and to dismiss the Company as a defendant to Count VI (ECF No. 19).

## III. DISCUSSION

The Company has moved to dismiss Count V for interference with ERISA benefits and to have the Company dismissed as a defendant to Count VI for enforcement of the terms of the Plan. The Court will address each of these arguments in turn.

### A. Count V: Interference With ERISA Benefits

Count V of Lampron's First Amended Complaint alleges interference with ERISA benefits against the Company under ERISA § 510. Specifically, Lampron alleges that when the Company discharged him in July of 2010, the Company acted with the specific intent to interfere with or deprive him of STD or LTD benefits in violation of ERISA § 510. (Am. Compl. ¶¶ 89-92.) In pertinent part, ERISA § 510 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to

4

> which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

ERISA § 510; 29 U.S.C. § 1140. As the First Circuit has stated, "[t]he ultimate inquiry in a section 510 case is whether the employment action was taken with the specific intent of interfering with the employee's ERISA benefits." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995).

In the Motion To Dismiss, the Company asserts that Count V should be dismissed based on the chronology of events as set forth in the Amended Complaint: (1) Lampron's STD benefits were terminated by Liberty as of March 31, 2010. (Am. Compl. ¶ 53.) (2) Lampron appealed the termination of STD benefits, and the denial was upheld by Liberty on June 9, 2010. (Id. ¶¶ 54, 56.) (3) Finally, the Company discharged Lampron from his employment on July 1, 2010. (Id. ¶ 19.) Accordingly, at the time Lampron was discharged, he was not entitled to any disability benefits because Liberty had previously determined that he no longer qualified for those benefits. The Company therefore asserts that it could not have taken the employment action with the specific intent of interfering with Lampron's ERISA benefits because Liberty denied his claim for benefits several weeks prior to his discharge from employment.

In Davidson v. Liberty Mutual Insurance Company, this Court reviewed an ERISA claim with a similarly problematic timeline. 998 F. Supp. 1, 7-8 (D. Me. 1998). In that case, the Court found that,

> [w]hen Liberty Mutual terminated Plaintiff on August 11, 1995, she had already been denied LTD benefits by Liberty Life on August 7, 1995. Therefore, as a matter of simple logic, her termination on August 11, 1995, could not interfere with her receipt of benefits because her claim for benefits had been denied as of August 7, 1995.

Davidson, 998 F. Supp. at 7. Likewise here, at the time of Lampron's discharge, the Company could not interfere with his receipt of any benefits because Lampron was not entitled to benefits at that time. Instead, at the time of discharge, any entitlement to benefits was purely speculative.

Lampron advances two arguments in an attempt to save Count V. First, Lampron claims that he might have become entitled to benefits at some point in the future, and therefore his termination interfered with those future potential benefits. (Pl.'s Opp. To Def. Pratt & Whitney's Mot. To Dismiss (ECF No. 27) at 3-4.) As an example of his future entitlement to benefits, Lampron points to a May 10, 2010 note from his doctor. (Id. at 4.) The note stated:

> Mark has been a patient of mine since October 2009. Since that time his anxiety has increased significantly. So much so, that he is seeing a psychiatrist. When talking with Mark and work is brought up his anxiety increases. His concerns about making mistakes at work is [sic] causing severe anxiety.

(Am. Compl. ¶ 59; Pl.'s Opp. at 4.) Lampron asserts that this note made his entitlement to future benefits likely and not merely speculative. However, this note was submitted to Liberty, who adjudicated benefits under the Plan, and was incorporated into Liberty's decision to deny Lampron's appeal in June of 2010. (See May 10, 2010 Ltr. from Mark Lampron to The Liberty Life Assurance Company of Boston (ECF No. 13-8) at 1, 5; June 9, 2010 Ltr. from Liberty Mutual to Mark Lampron (ECF No. 13-9) at 1-3.)[1] Accordingly, this doctor's note does not raise the right to benefits above the speculative level. Without more than the duly considered and

---

[1] Ordinarily, a court may not consider any documents outside of the complaint or not expressly incorporated in the complaint on a motion to dismiss, without converting the motion into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). Nonetheless, there is a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. When a document is central to the plaintiff's complaint, the document "merges into the pleadings" and may be properly considered by the court in determining a motion to dismiss. See id. Most of these elements are present with regard to both the May 10, 2010 doctor's note and the June 9, 2010 appeal denial. Neither party disputes the authenticity of the documents. The Amended Complaint refers to both the doctor's note and the June 9, 2010 denial explicitly. (Am. Compl. ¶¶ 56-59.) Thus, the Court has considered these documents without converting the present motion to dismiss into a motion for summary judgment.

denied doctor's note, Lampron presents pure speculation that he may have been entitled to benefits at some unarticulated point in the future. Such speculation is not sufficient to state a claim under section 510 of ERISA. Were it otherwise, any person employed in a job with ERISA benefits could state a claim under section 510 of ERISA upon being fired because he or she may become entitled to benefits in the future. See, e.g., Barbour, 63 F.3d at 37 (stating that "no ERISA cause of action will lie where the loss of benefits was a mere consequence of, but not a motivating factor behind, a termination of employment. Without such a requirement, every discharged employee could have a potential claim against his or her employer.")

Second, in his opposition to the Motion To Dismiss, Lampron asserts for the first time that he may have been fired by the Company because he had previously collected benefits under the Plan. A claim under section 510 can indeed be based on a claim sounding in retaliation or discrimination: "The cases interpreting section 1140 hold that this anti-discrimination provision is triggered when an employer retaliates against an employee for exercising rights under ERISA or when an employer takes some action against the employee for the purpose of preventing him from attaining a benefit." Kourinos v. Interstate Brands Corp., 324 F. Supp. 2d 105, 108 (D. Me. 2004) (emphasis in omitted). To state a claim under this theory, "[a] plaintiff must establish a prima facie case-that he was prospectively entitled to ERISA benefits, was qualified for his position, and was discharged under circumstances that give rise to an inference of discrimination." Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir. 2012) (internal citations and quotations omitted).

As discussed above, Lampron is unable to show that he had a prospective entitlement to ERISA benefits because any benefits were denied months prior to his discharge. Instead, Lampron had only a speculative right to ERISA benefits in the future. Moreover, in his

7

Opposition to the Motion To Dismiss, Lampron points to no paragraph in his First Amended Complaint in support of his retaliation or discrimination theory, instead stating that "there is ample facial plausibility for the argument that Mr. Lampron's collection of STD benefits made him a problem employee for Pratt & Whitney." (Pls.' Opp. at 4.) Despite this bald assertion, there is no support in the Amended Complaint for an interference with ERISA benefits claim under a discrimination or retaliation theory.

Because the First Amended Complaint fails to plausibly allege that the Company acted with the specific intent of interfering with Lampron's ERISA benefits, Count V has failed to state a claim upon which relief can be granted. Therefore, Count V of the Amended Complaint is DISMISSED.

### B. Count VI: Enforcement Of The Terms Of The Plan

The Company next argues that it should be dismissed as a defendant to Count VI because Lampron has not shown that the Company controlled or influenced the administration of the Plan and is therefore not a proper defendant to that cause of action. Count VI of the First Amended Complaint asserts a cause of action for enforcement of terms of the Plan under ERISA § 502(a)(1)(B). Generally, an employer is not a proper party to a claim for enforcement of the terms of the plan under ERISA § 502(a) unless "it is the designated plan administrator or fiduciary . . . . [or] it is the employee benefit plan's sponsor and no other administrator or fiduciary has been designated." Beegan v. Associated Press, 43 F. Supp. 2d 70, 73 (D. Me. 1999); see also LeBlanc v. Sullivan Tire Co., Inc., 526 F. Supp. 2d 75, 82 (D. Me. 2007) (stating that "[t]ypically, an employer is not the proper defendant when the plan documents name another entity as the plan administrator or claims fiduciary."). In this case, Lampron alleges that Liberty, not the Company, is the Plan Administrator. (Am. Compl. ¶ 9.)

Nonetheless, an employer still may be a proper defendant to a cause of action under section 502(a) where the employer "is shown to control the administration of a plan." Law v. Ernst & Young, 956 F.2d 364, 372 (1st Cir. 1992). However, "[w]here an administrator has been appointed by the plan, it is the responsibility of the plaintiff to show that the employer influenced or controlled the administrator's or fiduciary's decision." Beegan, 43 F. Supp. 2d at 74. The Company claims that it should be dismissed as a defendant to Count VI because Lampron has not sufficiently alleged that the Company influenced or controlled the Plan.

Although Lampron states that Liberty was the Plan Administrator, Lampron asserts that the First Amended Complaint sets forth facts from which it can be inferred that the Company had control or influence over the administration of the Plan. First, Lampron points to numerous paragraphs in the First Amended Complaint where he alleges that Liberty was acting "as an agent of the Company." (Am. Compl. ¶¶ 53, 56, 68.) For example, Lampron alleges that "Liberty, as an agent of the Company, denied Mr. Lampron's appeal and upheld its termination of Mr. Lampron's STD benefits beyond March 31, 2010." (Id. ¶ 56.) These conclusory allegations of agency are insufficient to survive a motion to dismiss. See Iqbal, 566 U.S. at 678. Further, Lampron alleges that when Liberty initially approved STD benefits through November 30, 2009, it was "acting on behalf of the Company." (Am. Compl. ¶ 44.) This statement inferentially supports the allegation that Liberty controlled the administration of the Plan and that the Company did not because it tends to show that the Company was not involved in the decision-making process for benefits under the Plan.

Finally, Lampron claims that the direct payment of STD benefits by the Company permits the inference that the Company influenced the administration of the Plan. The First Amended Complaint states that, "[t]he STD portion of the Plan is self-funded by the Company,

9

and the costs of STD benefits are paid for by the Company." (Am. Compl. ¶ 52.) Accordingly, Lampron asserts that the Company had a "profit motive" to influence or control the Plan. In Liston v. Unum Corp. Officer Severance Plan, successful claims for benefits were paid by the employer and the employer had adversely changed its interpretation of a change in control provision within a short period of time of plaintiff's claim. Liston v. Unum Corp. Officer Severance Plan, CIV. 01-CV-80-PC, 2001 WL 761228, at *5 (D. Me. July 6, 2001). The Court concluded that, "[t]his profit motive and the timing of [the employer's] interpretation of the change in control provision permit an inference that [the employer] oversees and influences the administration of the Plan." Id. In addition, that the employer used its general counsel as the process agent for claims against the Plan bolstered the Court's conclusion. Id. Lampron has not alleged any of the other factors that supported the Court's decision in Liston, nor has Lampron alleged that a profit motive was actually at play here. Instead, Plaintiff specifically alleged that Liberty was the Plan Administrator with the "discretion to determine eligibility for STD benefits under the Plan." (Am. Compl. ¶¶ 9, 68.) Therefore, this case is not analogous to Liston where multiple facts pointed to the inference that the employer influenced or controlled the plan. Liston, 2001 WL 761228 at *5. In short, Lampron has failed to show that the Company controlled or influenced the Plan and, thus, has also failed to state a claim that is plausible on its face against the Company under ERISA § 502. The Amended Complaint supports that Liberty, not the Company, controlled the administration of the Plan. Therefore, the Company is DISMISSED as a defendant to Count VI.

## IV.  CONCLUSION

For the reasons explained herein, Defendant Pratt & Whitney's Motion To Dismiss Count V of Plaintiff's Amended Complaint And To Dismiss Pratt & Whitney As A Defendant For Purposes Of Count VI (ECF No. 19) is GRANTED.


SO ORDERED.

      /s/ George Z. Singal
      United States District Judge

Dated this 21st day of May, 2013.